## MARY H. ROSS and others *v.* JOHN GARLICK.

Where a clause in a contract of sale, if interpreted literally, would be contradictory of other parts of the act and of doubtful meaning, the common intention of the parties, rather than a literal construction of the clause, should determine the interpretation. C. C. 1945.

Where the language of an agreement is susceptible of two meanings, it must be interpreted in the sense most congruous to the whole contract. C. C. 1947.

A party cannot allege his own turpitude.

APPEAL from the District Court of Iberville, *Nicholls,* J.

GARLAND, J. On the 5th of April, 1841, the plaintiffs sold to the defendant, by authentic act, a tract of land of about five *ar-*

*pents* front by forty in depth, more or less, situated on the bayou Goula, the consideration being the sum of $4000 cash, as stated in the act. On the same day a written instrument was signed by all the parties, in the presence of the notary and witnesses, in which it is said, " that the sale or bargain was first made for the sum of $4000, one-half payable in one year, and one-half in two years from the day of sale ; but in the expectation that the first note could be discounted in one of the Plaquemine banks, the Union Bank, or the Exchange Bank, the said sale is made for cash at the price of $4000, although no part of it has been paid, to enable the purchaser John Garlick, to obtain a loan on it, in the Union Bank ; and in case he obtains the loan, and pays the money down, within from four to six weeks, the sum he is to pay is $3500. In case he should fail in this, the record of this writing shall have the full effect of a mortgage, with privilege of the vendor for the payment of the price of $4000, as above mentioned, in one and two years from this day ; that is to say, the said land shall remain specially mortgaged for the payment of the said price as aforesaid. It is further agreed that in case the whole of the money is not paid within four to six weeks, or the half of the price discounted at bank interest of seven per cent, the said sale is to be null and void."

Garlick made an application to the branch of the Union Bank at Plaquemine to lend him $4000, to be secured by a mortgage on the land, and a number of slaves named in his application. The bank agreed to do so, provided the titles to the property were satisfactory. They were referred to the attorney of the bank, who reported that the titles were good : " But that no patent had as yet issued for the land. That if the bank insisted on that, the titles would not be perfect ; otherwise, they would be. That a receipt is as much evidence of title as a patent under the old law ; it might not be so under the law of June 22d, 1838, and revived May 1st, 1840." In consequence of this report, the bank declined to lend the money.

On the 17th of July, 1841, William H. Carr, the husband of Diana, one of the plaintiffs, addressed a letter to Garlick, stating that as the money had not been paid for the land within six weeks, he considered the sale null and void ; and that Garlick

must quit the premises, or pay rent at the rate of ten per cent on the amount of the price. At what time the defendant received this letter is not shown; but he did not quit the land in consequence of it, so far as the record informs us. At a subsequent period, but when precisely is not proved, the defendant gave a written notice to the plaintiffs that he considered the sale null and void, as he could not obtain the loan from the bank in consequence of the defective title of the plaintiffs; that the title was in another person; and that no payment had been made; and finally he claimed damages of them for failing to comply with their contract, and for the value of improvements put on the premises.

Sometime after the bank had declined to make the loan, on an application to the General Land Office for a patent for the land in the name of the plaintiffs, it was refused, on the ground that one had already been issued in the name of Andrew Hodge, junr., by virtue of an assignment to him by the plaintiffs. They denied the legality of any such assignment; and, together with the defendant, brought a suit against Hodge, to set it aside and quiet the title; in which action they were successful, and Hodge was decreed to have no title to the premises. About seven months after this judgment was rendered, the defendant not paying any part of the price, the plaintiffs had the second act or counter-letter recorded; and some months subsequently commenced this suit to recover $4000, with legal interest from the times of payment and the execution of the mortgage and privilege.

The defendant, in his answer, admits the sale of the land as alleged and proved, and that he was to apply to the bank for a loan to pay for it, which he did, and was refused; wherefore he says that, according to the terms of the contract, the same was null and void. He avers that the plaintiffs illegally sold him a tract of land, to which they had no title. That they had previously sold it to Hodge, who held the patent, and refused to give it up; and that the suit against Hodge, as between him and the plaintiffs, was fraudulent and collusive, and intended to put them in a position to sue for the price of the land.

Ross and others v. Garlick.

The court below gave a judgment for the defendant, and the plaintiffs have appealed.

From all the evidence in the record, it is certain that, as between the plaintiffs and the defendant, it was, in the first instance, the intention that the former should sell, and the latter purchase the land upon one and two years credit; and that none of them had any idea of applying to the Union Bank for a loan until they appeared before the parish judge to pass the sale, and he suggested the probability of a loan being obtained, whereby the plaintiffs would receive $3500 in cash, instead of $4000 in instalments of one and two years, and the defendant obtain a longer time for the payment of the latter sum, than that agreed upon by the parties in the first instance; and the question arises whether, after the probability of a loan was suggested, the parties intended to make the obtaining of it a condition upon which the sale was to take effect, and to change their previous understanding and agreement? When we look at the parol testimony on behalf of the defendant, and all the stipulations of the counter-letter or second contract, except the last clause, there cannot be a doubt as to the intention of the parties. An absolute sale was intended, and actually made for cash. By the counter-letter that sale was, in a certain event, to be changed into one upon terms of credit, and the acknowledgment of the cash having been paid annulled, and a mortgage stipulated to secure the price.

We do not any where find an absolute stipulation, on the part of the plaintiffs, to guaranty a loan being made by the bank, nor is it contended that such a warranty was intended; but the counsel for the defendant insists, and the court below so held, that they were bound to give him a good title so that he might obtain the loan. In the manner in which this position is stated, there may be some doubt of its correctness; but admitting it to be true, it appears to us that it was in effect complied with. The attorney of the bank stated that "the titles of the applicant were good." He says that no patent has yet been issued, and that if the bank insist on that, the title to the land would not be complete; but that the receipt and certificate of the Register and

Receiver were as much evidence of title under the old law as a patent. The plaintiffs had purchased the land under an old pre-emption law. The receipt for the money is dated in January, 1824. It was, therefore, not a want of title to the property, according to the opinion of the attorney for the bank, that prevented the loan from being made, but something else. The defendant's counsel now says, that it was because some of the plaintiffs had previously sold the land to Hodge; but the evidence does not sustain him, as it is clearly proved, that none of the parties thought of this assignment at the time ; and the attorney for the bank declares that he knew nothing of it, and consequently did not take it into consideration, when he passed on the title to the property. Nothing was said about the patent at the time of making the contract; and as it was not given to the defendant with the Receiver's receipt and Register's certificate, it is fair to presume that he knew that the plaintiffs did not have it, and were, therefore, not bound to furnish it. The warranty of the plaintiffs was to defend the title they gave to the defendant, and not an agreement to give one satisfactory to the directors of the bank. So far as the record informs us, no one has ever disturbed the defendant in his possession, nor attacked his title, either directly or indirectly.

It remains for us to decide, what is the meaning and effect of the stipulations, "that in case the whole of the money is not paid within from four to six weeks, or the half of the price discounted at bank interest of seven per cent, the said sale is to be null and void," and in whose favor they are made, and who can invoke them. These words, if literally interpreted, appear to us contradictory of what precedes them in the act, and of doubtful meaning ; we must, therefore, endeavor to ascertain what was the common intention of the parties, rather than to adhere to the literal sense of the terms. Civil Code, art. 1945. We do not believe it was the intention of the parties by the first clause in the stipulation, to declare that the defendant could, by neglecting or refusing for four or six weeks to pay the price, thereby annul the whole contract, because it would be at war with other provisions and agreements, and enable him to defeat the common will of the parties. It was clearly the object and

intention of the plaintiffs to sell the land, and of the defendant to purchase; and not their purpose merely to give the latter an option to buy, or not, as he might choose, at the end of four or six weeks, by paying the whole of the money, or refusing to do so; and, as we have before said, it was not the intention of the plaintiffs to guaranty a loan from the bank, therefore it was not their intention, in the event of its being refused, that the contract should be entirely null. We think the true meaning of the stipulations is, that, in the event of the price not being paid in the time specified, or the bank not making the loan, the sale should be null and void, so far as it might be necessary to give effect to the other agreements entered into by the parties, to secure the payment of the price in one and two years, as at first agreed on. This interpretation gives effect to all the clauses of the contract, and puts the parties in the situation in which there is no doubt they intended to stand, previous to the suggestion made by the parish judge, of the probability of a loan being obtained. Civil Code, arts. 1946, 1947, 1948. The agreement is no doubt susceptible of two meanings; and we must, therefore, take it in the sense most congruous to the whole contract.

We are of opinion, that there is no foundation for the defence set up by the defendant, that the plaintiffs had divested themselves of title to the land by the sale to Hodge, and that the suit, by which said sale was declared null, and they quieted in their title and possession, was collusive and fraudulent. There is nothing in the circumstances to justify such an allegation; and if there were any thing, the defendant is as much implicated as any one of the plaintiffs, as he was a party with them to that suit, and cannot set up his own turpitude as a defence. The judgment in that case divests Hodge of all title or claim,—in fact he never set up any; quiets the title and possession in the defendant; and entitles him to the possession of the patent. It is general and final, and the time for taking an appeal has elapsed. The defendant, therefore, complains with an ill grace of a judgment which makes his title good, so far as the plaintiffs, the United States, and Hodge are concerned.

As to the apprehensions expressed, of being disturbed by the

judicial mortgages existing against Andrew Hodge, jr., we see no ground for them. If the land was not the property of Hodge, the recorded judgments cannot effect it in the hands of the defendant. When he and the plaintiffs succeeded in their petitory action, they put an extinguisher on the mortgages.

Upon a full consideration of the whole case, we are of opinion that the judgment is erroneous, and must be reversed.

It is ordered and decreed, that the judgment of the District Court be annulled and reversed, and that the plaintiffs recover of the defendant, John Garlick, the sum of four thousand dollars, with interest at the rate of five per cent per annum on one half of said sum, from the 5th day of the month of April, 1842 until paid, and interest, at the same rate, on the other half of the same, from the 5th day of April, 1843, until paid; and it is further decreed, that the mortgage, and vendor's privilege in favor of the plaintiffs be recognized and rendered executory, and that process issue to sell the premises to satisfy the debt, interest, and costs; the defendant paying the costs in both courts.

*Labauve*, for the appellants.

*Edwards*, for the defendant.