**IMPERIAL OIL & GAS PRODUCTS CO. v. UNITED GAS PIPE LINE CO. et al.**

Civil Action No. 2234.

District Court, W. D. Louisiana, Shreveport Division.

May 4, 1948.

---

Sholars & Gunby, of Monroe, La., Wilkinson, Louis & Wilkinson, of Shreveport, La., and Vinson, Elkins, Weems & Francis, of Houston, Tex., for defendants.

DAWKINS, District Judge.

This suit, filed July 23, 1947, is for a declaratory judgment construing a contract entered into on February 21, 1918. Defendant has moved to dismiss the complaint on the grounds: (1) It failed to state a claim upon which relief could be granted; and (2) on a plea of prescription of ten years under Art. 3544 of the Louisiana Civil Code.

Plaintiff (called Imperial) makes part of its complaint the contract between itself, on the one part, and the DeSiard Development Co., Inc. (called DeSiard), and Ouachita Natural Gas and Oil Co. (called Ouachita), on the other. The allegations, in substance, are as follows:

That the defendants were the successors in title and assumed all the obligations of the DeSiard and Ouachita under said contract, which required DeSiard, as the owner of a lease upon 535 acres of land, known as the Phillips tract, "to acquire additional acreage," sufficient to make a total of 1500 acres, "on which lands, owned and to be acquired" it promised to drill gas wells. Other pertinent recitals were that Imperial would engage in the manufacture of carbon black to be made from gas furnished by DeSiard from said wells, under terms of the contract. Relevant provisions appear in the footnotes.[1]

The complaint describes it as a "requirements contract," and charges that, although DeSiard and Ouachita appeared as separate corporations, they had "substantially the

Shotwell & Brown of Monroe, La., and Herold, Cousin & Herold, of Shreveport, La., for plaintiff.

---

[1] "Said Imperial Company is to install all piping and other accessories from said meters into and upon its plant or plants.

"Said DeSiard Company hereby agrees to furnish, and said Imperial Company hereby agrees, obligates and binds itself to take from said DeSiard Company not less than three million cubic feet per day, and may take such additional amount as it may desire and as the said DeSiard Company may be able to furnish, not exceeding fifteen million cubic feet per day to be delivered by said DeSiard Company to said Imperial Company as stipulated hereinabove.

"Said DeSiard Company agrees to furnish said gas at the price and rate of two cents (2¢) per thousand (1000) cubic feet, which gas is to be measured on a pressure basis of eight (8) ounces above the atmospheric pressure at the location of said plant, to be computed according to Boyle's Law for the measurement of gas at varying pressures, and to render to said Imperial Company a statement at the end of each month, of the gas

same stock ownership and (were) under common management and control"; that relying upon said contract, it (plaintiff) "proceeded at large expense to build its plant as therein contemplated and has ever since the date of said complaint continuously operated the same"; that DeSiard had conducted no development upon the acreage owned by it (the Phillips tract) at the date of the contract, acquired no additional

furnished during the month, accompanied by the meter readings and charts; and the said Imperial Company agrees, obligates and binds itself to pay therefor at the rate aforesaid; all gas furnished and used in any month to be paid for on or before the 25th day of the succeeding month, and at the time of payment of such bills the accompanying charts are to be returned to the DeSiard Company.

"It is further understood and agreed between the parties hereto that this contract is made for the full term and period of three years from the date hereof, and is to remain in full force and effect, so long thereafter as the said DeSiard Company or Ouachita Natural Gas & Oil Company, Inc., to be hereinafter named as a party to this contract and designated as the Ouachita Company under the conditions and with the limitations hereinafter provided with respect to said Ouachita Company, are able to furnish gas in at least the minimum amount stipulated for herein.

"It is further understood and agreed by and between the said DeSiard Company and the said Imperial Company, that in event the rock pressure in that portion of the gas field owned and controlled by the DeSiard Company should decrease to such an extent that pumping said gas becomes necessary, then this contract, insofar as it affects the gas to be delivered from the leaseholds of the DeSiard Company, shall either terminate or the Imperial Company at its option and election may install the necessary equipment on the leaseholds of the said DeSiard Company for the purpose, and operate the same and take said gas from the wells thereupon situated, at the price and on the terms aforesaid, through the lines of the said DeSiard Company; and the said Imperial Company is hereby granted by the DeSiard Company the right and privileges of installing, maintaining and operating the necessary equipment for pumping said gas from any leaseholds now owned or that may be hereafter acquired by the said DeSiard Company in accordance with the provisions herein written, to the aggregate acreage of fifteen hundred (1500) acres, free of all cost and expense, so far as the said DeSiard Company is concerned.

* * * * * * * *

"It is further understood and agreed by the parties hereto that the said Imperial Company is to begin the erection of its plant for the use of the gas to be furnished under this contract, within thirty (30) days from the date of the signing hereof, and to complete the same as fast as possible under present conditions, unavoidable delays and accidents excepted, and is to have the privilege of using sufficient gas for its purposes during the erection and installation of its plant, at the prices and on the terms aforesaid, which said gas, in event the said DeSiard Company has not completed its wells to the point or stage of being able to furnish the same, shall be furnished by the Ouachita Company, as will be hereinafter stipulated.

* * * * * * * *

"Said DeSiard Company further agrees to keep its wells in good repair and gas producing condition and not to waste said gas but at all times to conserve the same to the end that there may be a uniform and continuous flow through its lines for the use of said Imperial Company hereunder; and said DeSiard Company agrees not to sell gas from said fifteen hundred (1500) acres to any other firm, person or corporation without the written consent of the said Imperial Company.

"Said DeSiard Company, in order to fully comply with its obligations herein, binds and obligates itself to within ninety days from the date hereof acquire leasehold ownerships for the purpose of gas development of a sufficient acreage, together with that now owned by it, to bring the total aggregate of its leasehold ownership up to fifteen hundred (1500) acres, said acreage to be acquired in proven gas territory.

"And now hereunto comes Ouachita Natural Gas and Oil Company, Inc., hereinabove and hereinafter designated and called Ouachita Company, and makes itself a party to this contract, and for the considerations herein flowing to it and of which it may be the beneficiary, agrees, obligates and binds itself to and in behalf of the other signatories hereto, as follows, to-wit:

"That in event the said DeSiard Company may be unable to complete gas well or wells sufficient to meet the demands of the said Imperial Company during the construction of its plant or plants hereinabove stipulated to be constructed, that is, said Ouachita Company, will install a line or lines of pipe from its wells into the plant or plants of the said Imperial

leases to make up the 1500 acres and had never delivered any gas to plaintiff; "but Ouachita, and subsequently those holding under Ouachita, who had assumed its obligations, including the present defendant, United," have been furnishing to plaintiff, until Monday, July 14, 1947, its requirements under the terms of said written contract; that by letter dated April 11, 1947, copy of which was annexed to the com-

Company the amount of gas required for its purposes at the price herein stipulated to be paid to the DeSiard Company for such service, and which price is to be paid by the said Imperial Company direct to the Ouachita Company, and that is, the said Ouachita Company, will continue to supply the demands of the said Imperial Company until such time as it may be notified that the DeSiard Company is ready and prepared to undertake and comply with its obligations herein to the Imperial Company, and to furnish the amount of gas stipulated in the contract herein to be furnished by it to said Imperial Company.

"The said Ouachita Company further agrees that in event the said DeSiard Company should at any time subsequent to its commencing to furnish gas to the Imperial Company in compliance with its obligations herein provided in favor of said Imperial Company, fail for any reason, without pumping, to furnish the amount desired within the limitations provided in this contract, it, the said Ouachita Company, will supply the same or such deficit as may be necessary to make up the requirements of the said Imperial Company, and for such service, subject to the conditions hereinafter imposed or reserved in favor of said Ouachita Company, the said Imperial Company will pay direct to the said Ouachita Company at the price and on the terms stipulated herein to be paid to the said DeSiard Company therefor.

"It is distinctly understood and agreed by and between the said Imperial Company, the said DeSiard Company and the said Ouachita Company, that if at any time there is an actual shortage of gas supply from its wells, the said Ouachita Company's obligations to furnish gas herein in that case, are limited so as not to interfere with, lessen or decrease the amount of gas that said Ouachita Company furnished or is to furnish to its patrons or future patrons in the City of Monroe, Louisiana, or within three miles thereof; and also with the understanding that if the gas in that portion of the territory owned and controlled by the said Ouachita Company should decrease in volume so as to make it impossible for said Company to furnish its patrons with sufficient gas without reducing or impairing its ability to furnish gas required by the Imperial Company, then the gas to be furnished under this contract to the said Imperial Company is to be decreased so as not to interfere in any manner with the service to be rendered to the patrons of said Ouachita Company referred to herein, it being understood that the right of the said Ouachita Company to furnish gas to its patrons is superior to and takes priority over the right hereby granted or its obligations herein entered into in favor of said Imperial Company, and that this contract insofar as it affects in any way the said Ouachita Company, may be by it terminated at any time that the supply of gas is insufficient to furnish the requirements of the aforesaid patrons of said Ouachita Company.

"It is further understood and agreed, however, that the aforesaid superior right, with the corresponding right of termination to be exercised in favor and by the said Ouachita Company, shall extend only to the supply of gas for domestic, commercial and manufacturing purposes to the present and future patrons of said Ouachita Company in the City of Monroe or within three miles thereof located on or near its pipe lines, and to gas supplied from wells on the leaseholds of the said Ouachita Company as now existing, acquired from A. L. Smith, L. L. Lieber, Dr. H. C. Cole, Liston and Weddell and George N. Trezevant, aggregating six thousand and eighty (6080) acres, and upon which there are at this time four producing wells known and designated as Smith No. 1, Smith No. 2, Trezevant No. 2, and Lieber No. 1, and such other wells as may be from time to time brought in by said Ouachita Company on said described acreage.

"It is further expressly understood and agreed by the parties hereto that the obligation of the Ouachita Company herein is further limited to furnishing such gas as may flow by natural pressure from the wells of said Company, and that the stipulation hereinabove made providing for pumping only applies to the gas and wells of the DeSiard Company, and that said Ouachita Company is not to furnish gas to another Carbon Manufacturing Company or Companies, to such an extent as to interfere with its obligations under this contract, whether said factories are located in Monroe, Louisiana, or elsewhere.

"All the terms and covenants of this contract it is agreed shall extend to and be binding upon the successors and assigns of the respective parties hereto."

plaint, defendant "now takes the position that despite its unconditional assumption of the obligations of DeSiard and Ouachita, it is no longer under obligation to furnish to plaintiffs the gas required by it, under said contract, and did, on or about July 14, 1947, curtail the supply * * * down to * * * approximately 2,600,000 cubic feet * * * per day * * * notwithstanding * * * plaintiff, by its letter * * * under date of June 4, 1947, * * * annexed * * * challenged the right of defendant to curtail below 15,000,000 cubic feet of gas per day * * * and called upon defendant to * * * comply with its obligations * * *"; that this action of defendant caused plaintiff "to close down more than eighty per cent of its plant * * * making its investment with respect to such idle facilities valueless * * *" and causing plaintiff irreparable damage. For those reasons it alleged "a serious and genuine controversy now exists * * * as to the obligations of" defendant "under the said contract and as to the meaning, construction, effect and mutual liabilities thereunder"; that defendants bound themselves to deliver and plaintiff agreed to take and pay for not less than three million cubic feet of gas per day, with the privilege of demanding a maximum of fifteen million cubic feet, if the needs of business required; that had DeSiard complied with its obligation to acquire the additional acreage and to develop the 1500 acres, it and its successors in interest would be amply able at this time to supply the maximum amount under said contract; that defendant "now offers as an excuse for non-compliance" the claim that the needs of its patrons in Monroe and environs "make it impossible to supply the maximum of 15,000,000 cubic feet of gas per day to the plaintiff"; that this contention is without merit for the reasons stated, and had the acreage been developed, the same would now furnish all the gas needed for other customers and to supply plaintiff with its requirements under the said contract; that no additional wells have ever been drilled upon the 6080 acres as promised by Ouachita for the fulfillment of this contract notwithstanding said properties were acquired by defendant and its predecessors in title more than sixteen years ago. Further,

that had this 6080 acres been properly developed, sufficient gas for all purposes would now be available; and further, that defendants and their predecessors, whose obligations were assumed, acquired other large areas of gas producing lands in the Monroe field, more than ample to supply the maximum requirements under the contract.

It further alleged that because of the failure of DeSiard to develop the Phillips tract, and to acquire and develop additional acreage as promised, it and the defendants are now estopped to contend the said requirements cannot now be supplied from said acreage; that defendant has not only curtailed delivery below the minimum provided in the contract but threatens to reduce it further, and during the cooler months, to shut off the supply entirely; that if this is done, it will destroy the value of plaintiff's investment in its plant; and, that since defendant notified plaintiff of its contention "that it was no longer obligated to supply gas under said contract," plaintiff has been endeavoring to secure from other producers in the Monroe field and elsewhere a "supply of gas * * * to operate its plant" at prices which would permit it to do so at a fair profit, all without success.

Under the facts plead plaintiff alleges that it is entitled to "a judgment decreeing the specific performance of the obligations of United as the successor of DeSiard and Ouachita * * * and that it is entitled to injunctive process * * *" for enforcement of such decree. It prays that the Court decree that (a) defendant is under obligation to furnish the gas requirements to plaintiff within the minimum and maximum limits provided by the contract; (b) that the judgment further decree specific performance of the said contract; (c) that a mandatory injunction issue for that purpose; (d) that "for the purpose of affording the full and complete relief which should be extended by a court of equity, said judgment recognize that all the leases, mineral rights and other properties formerly belonging to Ouachita, now owned by Union Producing Company," and, subject to the rights of plaintiff, under the aforesaid contract, for maximum delivery of 15,000,000 cubic feet of gas per day, be enforced by mandatory injunction; (e) that the Court

retain jurisdiction for those purposes; and (f) that jurisdiction be retained for the further purpose of "liquidating and decreeing damages accruing to this plaintiff by reason of the wrongful acts of the defendants as hereinabove alleged"; or in the alternative that plaintiff's right to sue for damages be reserved.

Basically, defendant, by this motion contends that the contract sued upon and annexed to the petition is not susceptible of enforcement by a decree for specific performance, in that (a) although it stipulated DeSiard was the owner of the Phillips tract of 535 acres, and bound itself to acquire 965 acres additional to make a total of 1500 acres, all of which was to be developed for fulfillment of the contract, these provisions were all executory and were never performed; (b) the Court could not, in the beginning, and can not now, compel it to do so, particularly at this late date; and (c) that any cause of action for that purpose which may have existed has long since prescribed under provisions of the Louisiana Civil Code.

Of course, the motion to dismiss admits all the allegations of fact of the complaint as modified by the provisions of the contract and other exhibits annexed thereto. If, for the moment, we eliminate the Ouachita and consider the matter as if the DeSiard had owned, at the time of making the contract, producing leases sufficient to furnish plaintiff the minimum and maximum quantities of gas for the price agreed upon, and this condition had continued up to this time, there would appear to be no reason why it should not continue to do so, as was done up to July 14, 1947, in the absence of the happening of conditions provided in the contract, or of other circumstances now existing, which would make specific performance either inequitable or impossible. However, the contract recognized that DeSiard, although owning the Phillips tract, had not developed it, and that to fulfill the undertaking, it was necessary to acquire the other acreage and to develop it all, in order to supply the quantities of gas stipulated. In this situation, without the joining of Ouachita in the contract, it would seem clear that the court could not have enforced the obligations to acquire and develop the acreage as agreed; but this would not necessarily have been true, after it had been so acquired and developed. Such failure, in the absence of Ouachita as a party to the contract, would have relegated Imperial to an action in damages, with the result that the matter would probably have been settled, judicially or otherwise, within a short time after default by DeSiard. But it was not left in that condition. Anticipating that DeSiard might not, for some reason, comply with its obligations, the contract in Article 5 declared that it should be "for the full term of a period of three years from the date hereof, and is to remain in full force and effect so long thereafter as the said DeSiard Company *or Ouachita Natural Gas and Oil Company, to be hereafter named as a party to this contract and designated as Ouachita Company under the conditions and with the limitations hereinafter provided with respect to said Ouachita Company are able to furnish gas in at least the minimum amount stipulated herein.*" (Emphasis by the writer.)

In the 7th Article, the Ouachita is again mentioned along with DeSiard as having the right to extract the gasoline from all gas to be furnished, and Article 8 thereof stipulates that the "DeSiard Company and the said Ouachita, should it become necessary under the conditions hereinafter named and stipulated for delivery by said Ouachita Company of any gas under this contract" should keep their pipe lines in good repair "up to the meters installed under this contract" and that Imperial should keep in repair all pipe lines "from said meters into their said buildings," and neither the DeSiard nor Ouachita should be liable for any damages occurring in the plant beyond said meters. By Article 9, it was further agreed that Imperial should begin erection of its plant "within thirty days from date of the signing hereof" and be completed as rapidly as was reasonably possible under existing conditions, during which time Imperial was to be furnished gas at the same price by Ouachita, and *"in event the DeSiard Company has not completed its wells to the point or stage of being able to furnish, the same shall be furnished by the Ouachita Company, as shall be hereinafter stipulated."* (Emphasis by the writer.)

In Article 11 the parties were to be absolved from performing the contract in event of legislation prohibiting the use of natural gas for making carbon black.

In Article 13 DeSiard and Ouachita further agreed to keep their facilities in good repair, to conserve and not waste gas "to the end that there may be a uniform and continuous flow for the use of Imperial, * * * and DeSiard agrees not to sell gas" from the said 1500 acres to any one else "without the written consent of the said Imperial Company."

In Article 14 DeSiard bound itself "to within 90 days from the date hereof acquire leasehold ownerships for the purpose of gas development of a sufficient acreage together with that now owned by it, to bring the total * * * up to fifteen hundred (1500) acres, said acreage to be acquired in proven gas territory." The last paragraph of this article provided:

"And now hereunto comes Ouachita Natural Gas & Oil Company, Inc., hereinabove and hereinafter designated and called Ouachita Company, and makes itself a party to this contract, and for the considerations herein flowing to it and of which it may be the beneficiary, agrees, obligates and binds itself to and in behalf of the other signatories hereto, as follows. to-wit:"

Then follows Articles 15, 16, 17, 18, and 19 appearing in the footnotes, from which it is seen that Ouachita, within certain limitations, in effect, agreed to furnish the gas stipulated if DeSiard "for any reason" failed, placing itself in the position of the latter in the performance of this contract, which it continued to carry out for almost thirty years. In such a situation the burden rests very heavily upon defendants to show that conditions have changed to a point which would now make it impossible or inequitable to perform within the terms of the assumption to the same extent as would have been required of DeSiard. The suit is not, it is believed, one to require, as contended by defendants, the development of the Phillips tract, or the acquisition and development of leases to make up the 1500 acres, but to compel them to continue to furnish the quantities of gas within the minimum and maximum stipulated. The allegations with regard to these failures are what may be called historical, as showing why defendants could not, in equity, be relieved.

Contracts for furnishing minimum and maximum quantities of commodities to manufacturers, for definite periods of time, at fixed prices, have been sustained uniformly. Sometimes the option is in favor of the buyer, and at others, the seller. If the former, he is bound to take the minimum and may demand the maximum; while the latter must supply the minimum and may require acceptance of the maximum. United Carbon Co. v. Interstate Natural Gas Co., 176 La. 929, 147 So. 37; Lee v. National Box Co., 170 La. 1065, 129 So. 638; Taggert v. Brimfield, 3 Cir., 281 F. 830.

It does not necessarily follow that because the value of gas has increased, defendants for that reason alone should be relieved of their obligations. Nor, is it apparent on the face of the complaint that the court would have to do more, in the present proceeding than decide whether, in the light of the equities disclosed upon hearing, the relief prayed for should be granted. Since the demand, as such, is not one to compel the purchasing of lands or the drilling of wells, the prescription pleaded appears to have no application in view of the fact, that, according to the complaint, defendants continued to perform until a few days before the action was filed, and plaintiff had no ground to complain as long as it was receiving all it was entitled to under the contract in the meantime.

According to its complaint, promptly upon being advised that the contract would not be carried out further, plaintiff brought this suit for a determination of its right to specific performance, and the matter can be determined only after a hearing.

The motion to dismiss and plea of prescription will be denied at this time.

Proper decree should be presented.