136 So.2d 48

Robert C. LONG

v.

FOSTER & ASSOCIATES, INC.

No. 45657.

Dec. 11, 1961.

Rehearing Denied Jan. 15, 1962.

Harrison & Brown, Shreveport, J. Denson Smith, Baton Rouge, for plaintiff and appellant.

Wilkinson, Lewis, Madison & Woods, Shreveport, for respondent.

HAMITER, Justice.

Robert C. Long instituted this suit to recover damages ex contractu in the amount of $22,399.68. Allegedly, they arose out of the active breach by the defendant, Foster & Associates, Inc., of a written, five year, employment agreement.

Having concluded that the contract on its face was invalid and unenforceable, because it contained a potestative condition, the district court rendered and signed a judgment sustaining defendant's exception of no cause of action and rejecting plaintiff's demands as in case of non-suit.

On appeal the Court of Appeal approved the district court's conclusion (on the mentioned exception) as to the invalidity of the agreement; but it amended the judgment to the extent of, and by, dismissing the suit unconditionally. La.App., 129 So.2d 601. We granted certiorari.

Since the controversy is presented solely on the exception of no cause of action a determination of the legal issues tendered for consideration must be based on plaintiff's well pleaded allegations of fact and on the pertinent provisions of the documents annexed to and made a part of the petition. These disclose the circumstances hereinafter set forth.

On or about July 7, 1955 plaintiff entered into the employment contract in question with KTBS, Inc., a Louisiana corporation operating a radio station in Caddo Parish, which was to become effective on July 8, 1955 and continue through July 7, 1960 (five years). The instrument provided that the employee would render services in connection with the installation, operation, maintenance, and repair of radio and television equipment owned by the employer; and it contained stipulations respecting, among other things, minimum weekly wages, payments for overtime work, absence due to sickness, and leave for military duty with subsequent re-employment.

The contract further provided, in Section 17 thereof, the following: "The Party of the 2nd Part [the employee] reserves the privilege to cancel this Agreement at any time upon two (2) weeks notice. Should any Union be certified and recognized as the bargaining agent for any unit of employees which includes the Party of the 2nd Part, the Party of the 1st Part [the employer] reserves the privilege of cancelling this Agreement at any time up-

on two weeks notice, in writing, to the Party of the 2nd Part. And/or should decertification of the present Union be instituted with the result that the Union not be decertified then the Party of the 1st Part reserves the privilege of cancelling this agreement at any time upon two weeks notice, in writing to the Party of the 2nd Part." (Brackets ours.)

Under the terms of the agreement plaintiff commenced his employment with KTBS, Inc. and continued to work for that employer until October 23, 1957, at which time the radio station was sold to this defendant. Thereafter, the purchaser operated the station, utilizing for a short period the services of plaintiff pursuant to the aforedescribed contract which it had acquired through an assignment and the obligations of which it had assumed.

On January 14, 1958 (some two and one-half years after the agreement was confected) the defendant gave notice in writing to plaintiff that his employment would be terminated at the end of two weeks, the letter assigning no reasons for the termination. Thereupon the latter engaged the services of an attorney who was definitely informed by the manager of the station that the employment would not continue after January 29, 1958.

This suit followed. In it plaintiff seeks recovery for the wages to which he would have been entitled during the remaining portion of the contract and for stipulated penalties.

Under the exception of no cause of action filed by the defendant, which was maintained by the district court and Court of Appeal as aforeshown, it is contended that the contractual condition giving plaintiff the right to terminate the contract on two weeks' notice was purely potestative within the meaning of Revised Civil Code Articles 2024 and 2034; that it was not supported by any consideration; and that, hence, the entire agreement is a nudum pactum and unenforceable. And in support of the contention defendant relies heavily on Blanchard v. Haber, 166 La. 1014, 118 So. 117. (Also cited is Cloverland Dairy Products Company, Inc. v. Grace, 180 La. 694, 157 So. 393 which was decided squarely on Blanchard v. Haber, supra, notwithstanding that the two cases involved somewhat different factual situations. The legal conclusions announced hereinafter respecting the Blanchard decision are equally applicable to the Cloverland Dairy case.)

The mentioned codal provisions recite:

"2024 [2019 N 1170]. The potestative condition is that which makes the execution of the agreement depend on an event which it is in the power of the one or the other of the contracting parties to bring about or to hinder."

"2034 [2029 N 1174]. Every obligation is null, that has been contracted, on a potestative condition, on the part of him who binds himself."

Involved in the heavily relied on Blanchard case was an employment contract wherein the defendant Haber, a dentist, agreed to perform services for the plaintiff Blanchard during a ten year period. One stipulation therein was that either party had the right to withdraw from the agreement on the giving of thirty days' notice to the other. Another covenant was that if the contract was so terminated by either party the employee would not practice his profession, for a period of ten years thereafter, within a given radius of the employer's establishment. Haber exercised his option to cancel the agreement and then commenced to practice dentistry in violation of the non-competitive provision. In the proceedings instituted by Blanchard to enjoin Haber from so practicing this court held that the thirty days' cancellation clause in Haber's favor amounted to a potestative condition, unsupported by any consideration, which rendered the contract null and unenforceable in its entirety.

With respect to the Blanchard decision the Court of Appeal, in the instant cause, noted: "Although the opinion in the cited case appears to be sound authority for the interpretation and application of potestative conditions [as provided for in the above quoted codal articles], we find that it has been subjected to considerable criticism in this respect and is generally considered by authoritative commentators as having reached a sound conclusion predicated more upon consideration of public policy (with respect to competitive agreements) than upon the asserted potestative condition * * *. The same implication is found in the opinions of Judge Foster in Cali v. National Linen Service Corporation, 5 Cir., 38 F.2d 35, and of Judge McCaleb in Martin-Parry Corp. v. New Orleans Fire Detection Service et al., 221 La. 677, 60 So.2d 83. *Indeed, the latter opinion specifically rejected both grounds enunciated in the opinion in the Blanchard case,* the first in that it was erroneous because it effected a division of the contract, and the second, involving the potestative nature of the condition, in that the right of termination of the contract under consideration was mutually accorded to both parties." (Brackets and italics ours.) [129 So.2d 604]

As stated by the Court of Appeal, this court in the Martin-Parry case did completely repudiate the reasons assigned for the decision rendered in Blanchard v. Haber. Therein, the employer was attempting to enforce by injunction a clause in the employment contract which forbade the defendant employee, for a period of two years after termination of the agreement, to disturb or entice away any other em-

ployee or any dealer of the company. Like in the Blanchard case, the employee had exercised his option to terminate the employment (by the giving of a stipulated ten days' notice); but, unlike its result, the court (in the Martin-Parry controversy) unanimously concluded that the contract contained no purely potestative condition, was not void, and that the employer could enforce the restrictive provision by injunctive process.

In reaching that conclusion we said: "* * * a reexamination of the reasoning of Blanchard v. Haber is pertinent. * * * This court held that the promise of the defendant was unenforceable because it lacked serious consideration and that plaintiff's obligation under the employment contract was subject to a potestative condition. In concluding that the agreement of defendant not to engage in competitive business was without consideration, the court stated that, as defendant was paid no more than his salary for which he gave his services, he received nothing for the promise. *This resolution, we think, was erroneous as it effected a division of the contract into two parts,* one valid and the other invalid, and completely overlooked the obvious fact that the promise not to compete with plaintiff was an integral part of the original bargain, without which defendant might not have obtained the position. The other ground that the condition was potestative was

likewise on unsound footing. The thought of the court was that, since the plaintiff employer could terminate the employment within 30 days, it was within his power to hinder performance of the obligation. But the flaw in this view is that the right of termination was mutual, being accorded to both parties; a potestative condition exists only when there is an exclusive right in one party. *Indeed, the obligations in an employment contract are reciprocal, i. e., the letting out of services for remuneration; additional covenants or promises by either one or the other party are merely a part of the moving consideration or inducement for making the contract."* (Italics ours.)

Obviously, the discussed two decisions cannot be reconciled on any theory. Of course, the result of the Blanchard case was probably correct, because the invoked non-competitive clause was contrary to public policy (in fact, following the decision the Legislature by Act 133 of 1934 specifically declared it to be such and prohibited the insertion of a condition of that nature in the employment contracts); but we are satisfied that the reasons given therefor were unsound, just as was indicated in the Martin-Parry opinion.

Moreover, such reasons were not justified by the jurisprudence cited in support thereof. Thus, some of the cited cases held that the contracts involved were valid. Most of the others, such as Murray et al.

v. Barnhart, 117 La. 1023, 42 So. 489, related to oil and gas leases, the sole purpose underlying the execution of which was the drilling of wells; but in reality, the lessees were in no manner obligated to drill. Contrawise, in the Blanchard-Haber contract, as well as in the agreements of the Martin-Parry case and the instant cause, both parties (so long as it remained in effect) had reciprocal duties to perform—the employee to work and the employer to pay his salary.

The mentioned cases relating to oil and gas leases would be pertinent here if plaintiff were contending (and if his contract provided) that he was not required to perform, yet his employer was obligated to pay him wages. But that situation is not presented. This employee merely asserts: there exists a valid and binding contract, under the terms of which both parties have definite and reciprocal obligations to discharge (the rendering of services and the payment of wages) until such time as I exercise the cancellation option granted to me as part of the moving consideration for executing the agreement. If and when I exercise that option neither party is bound any longer. Such a distinction, it may be noted, was recognized in Kennon v. Brooks-Scanlon Company, 148 La. 120, 86 So. 675, a case also cited in support of the Blanchard decision but actually in which the contract involved was held to be valid.

It is well to point out that the above quoted observations made in the Martin-Parry case, particularly those emphasized, are in keeping with the following provisions of Revised Civil Code Article 1764 relative to conventional obligations: "All things that are not forbidden by law, may legally become the subject of, or the motive for contracts; but different agreements are governed by different rules, adapted to the nature of each contract, to distinguish which it is necessary in every contract to consider:

"1. That which is the essence of the contract, for the want whereof there is either no contract at all, or a contract of another description. * * *

"2. Things which, although not essential to the contract, yet are implied from the nature of such agreement, if no stipulation be made respecting them, but which the parties may expressly modify or renounce, without destroying the contract or changing its description; * * *

"3. Accidental stipulations, which belong neither to the essence nor the nature of the contract, but depend solely on the will of the parties. The term given for the payment of a loan, the place at which it is to be paid, and the nature of the rent payable on a lease, are examples of accidental stipulations.

■ "What belongs to the essence and to the nature of each particular descrip-

tion of contract, is determined by the law defining such contracts; accidental stipulations depend on the will of the parties, regulated by the general rules applying to all contracts." (The word "accidental" can mean "incidental" or "of secondary importance". See Webster's New International Dictionary, Second and Third Editions. Obviously, in the last quoted article it is used in that sense in view of the examples given and of the fact that "accidental stipulations" depend solely on the will of the parties.)

■ Further, it is important to notice that according to our Revised Civil Code employment contracts, such as the one with which we are now concerned, are deemed to be leases of labor. Therein it is said: "Lease or hire is a synallagmatic contract, to which consent alone is sufficient, and by which one party gives to the other the enjoyment of a thing, or his labor, at a fixed price." Article 2669. "There are two species of contracts of lease, to wit: 1. The letting out of things. 2. The letting out of labor or industry." Article 2673.

And Article 2670 sets forth the essentials of lease contracts, as follows: "To the contract of lease, as to that of sale, three things are absolutely necessary, to wit: the thing, the price, and the consent." In the confection of the labor lease involved here all three of these requirements were met, thereby rendering it complete and executory; and for more than two and one-half years of its five year term (until an active breach by the employer occurred) the obligations undertaken were fully discharged.

Again, the incidental stipulations contained in the instant agreement, which undoubtedly served as inducements for making the contract (such as plaintiff's cancellation option on giving two weeks' notice), were effective and binding since it has not been contended that any were violative of law or public policy. In this connection, as was indicated in the Martin-Parry opinion, an employment contract cannot be divided into various incidental covenants and sustained only on a finding of a reciprocal consideration for each stipulation. Unless covenants of that nature are considered as being merely part of the moving causes or inducements for making the contract almost none of today's complicated agreements, either in the field of labor or elsewhere, could stand the test of mutuality as urged by this defendant. In fact, in the very contract before us there is a stipulation that the employer will pay to the employee his salary, up to a period of two weeks, when he is ill and unable to perform. But there appears no reciprocal covenant on the part of the employee to work for nothing if the employer should experience financial difficulties and become unable to pay wages.

Too, often a contract contains a clause relieving the employer of his obligation to pay in the event of union involvement, as indeed does the instant one. Can it be said that such a clause, as well as the entire contract in which it is found, is invalid because of lack of mutuality? We think not. Rather the agreement is to be considered in its entirety; and all incidental stipulations, when not offensive to law and public policy, must be given effect.

█ While the assailed cancellation clause involved here may fall within the definition of a potestative condition, as set forth in Revised Civil Code Article 2024, it does not appear to be such a stipulation as results in the nullity of the agreement under Article 2034 in view of Article 2035 which recites: "The last preceding article is limited to potestative conditions, which make the obligation depend solely on the exercise of the obligor's will; but if the condition be, that the obligor shall do or not do a certain act, although the doing or not doing of the act depends on the will of the obligor, yet the obligation depending on such condition, is not void." The background of the insertion of Article 2035 into our Civil Code in 1825 (it was not contained in the Code Napoleon), as well as its effect on the preceding Article 2034, was discussed in Humble Oil and Refining Company v. Guillory et al., 212 La. 646, 33 So.2d 182. And therein we con-

cluded that Article 2034, because of the limitations placed on it by Article 2035, is applicable only to the purely potestative condition, that is, one which is subject only to the whim or pleasure of the promisor and would involve no detriment, disadvantage or inconvenience to him if he brings about or hinders the happening of the event on which the obligation depends.

In the instant case the confection of the agreement was not left solely to the whim or pleasure of the employee. As we have shown it was complete in every essential detail when executed, and each party had a definite obligation to perform. Of course, the defendant asserts that a cancellation by the employee on giving two weeks' notice would involve no detriment, disadvantage or inconvenience to him since he would be paid during that period. But we doubt the correctness of this assertion. In the event of his exercising the option to cancel the contract he would lose the certainty of employment thereunder for the remaining portion of the stipulated term. This, incidentally, was not so in the Blanchard and Martin-Parry cases; in each there was no certainty of employment for the contract's duration inasmuch as the employer (as well as the employee) could have cancelled on the giving of a prescribed notice.

But conceding for the sake of argument (and for that purpose only) that the as-

sailed cancellation clause was purely potestative in nature, nevertheless it related solely to the duration of the contract; and Revised Civil Code Article 2036 specifically recognizes the validity of an agreement when the duration thereof is left to the will of one of the parties. That article states: "An obligation may also be made, by consent of the parties, to depend on the will of the obligee for its duration. Thus a lease may be made during the will of the lessor, and a sale may be made conditioned to be void, if the vendor chooses to redeem the property sold." The lease reference is significantly pertinent here, for an employment agreement (as heretofore pointed out) is a contract of lease wherein the employee is a lessor with respect to his labor.

At this point it is appropriate to notice that Article 2036 was not discussed in Blanchard v. Haber, supra, However, it was taken into consideration in Conques v. Andrus et al., 162 La. 73, 110 So. 93 (a case also not mentioned in the Blanchard opinion). Therein, the plaintiff purchased stock from the defendants for $2922.50, the contract of sale providing that the sellers would repurchase the stock at the same price for cash if the purchaser became dissatisfied with it at any time after the expiration of five years. Subsequent to the mentioned period the vendee attempted to enforce the repurchase clause. This court, despite the argument that the clause was

potestative and without consideration, maintained the contract's validity. In doing so it very aptly stated: "Parties are at liberty to make any kind of contract they see fit to make, and which is not contrary to law, public policy, or good morals. And it is a familiar principle that as a person binds himself so shall he be bound and remain bound until discharged by law or released by consent of the person to whom he is bound.

"Neither the articles of the Code nor the jurisprudence of this state accord to an obligor the right to absolve himself from his obligation because the execution of such obligation is made to depend on the happening of an event which is within the power of the obligee to bring about or to hinder.

"The conclusion we have reached is supported by article 2035, Civil Code, * * * And likewise by article 2036, * * *."

We do not find that the cases cited and relied on by this defendant in any way militate against our conclusion that the cancellation clause in question (even if potestative in nature) did not render the contract a nudum pactum (except the Blanchard and Cloverland Dairy decisions, discussed and criticised above). They fall, generally into three categories involving namely: (1) so-called continuing sales agreements, (2)

purported mineral leases, and (3) contracts requiring only interpretations.

In those cases relating to sales the court found that the questioned provisions of the agreements were such as either to bind one party to perform a given act without the other being bound in any manner whatever or to impose unconscionable obligations. Campbell v. Lambert and Company, 36 La. Ann. 35 (as modified and limited by Beck v. Fleitas, 37 La.Ann. 492 and Landeche v. Sarpy, 37 La.Ann. 835), Nelson v. Barber, 143 La. 783, 79 So. 403, and Martin v. Dutton Motors, Inc., 206 La. 154, 19 So. 2d 32.

In each of the purported mineral lease cases, as pointed out in our discussion of the Blanchard case, the court concluded that there had been no suitable consideration given or obligation incurred by the lessee for the right to "tie up" the lessor's property for the term of the lease. Murray et al. v. Barnhart, supra, Goodson v. Vivian Oil Company, 129 La. 955, 57 So. 281, Raines et al. v. Dunson et al., 145 La. 525, 82 So. 690, and Noxon v. Union Oil Company of California et al., 210 La. 1074, 29 So.2d 67. (The decision in Avery v. International Trade Exhibition, Inc., 163 La. 454, 112 So. 44, was based on the same principle of law, although it concerned a promise unsupported by any consideration to refrain from collecting salary already earned and due.)

Sherer-Gillett Company v. Bennett, 153 La. 304, 95 So. 777 and United Carbon Company v. Interstate Natural Gas Company, Inc., 176 La. 929, 147 So. 37, fall into the third category above mentioned. The decision in each of those cases rested solely on an interpretation of the involved contractual provisions. Furthermore, in neither was a party seeking to defeat the contract or any clause thereof; rather the plaintiff sought only a determination of the obligations under the entire agreement.

For the reasons assigned the judgment of the district court and the Court of Appeal are reversed and set aside; the exception of no cause of action is overruled; and the cause is remanded to the first named court to be proceeded with according to law and the views hereinabove expressed. The defendant shall pay all costs incurred to this time. All further costs shall await the final determination of the litigation.

HAWTHORNE, J., dissents with written reasons.

HAMLIN, J., dissents, being of the view that the opinion and decree of the Court of Appeal are correct.

HAWTHORNE, Justice (dissenting).

The Court of Appeal stated that the issues raised in this appeal required it "to enter that vague and uncertain twilight zone of our jurisprudence bearing upon the definition and application of the potestative

condition". In support of this "conclusion of uncertainty" it quoted and cited writings on the subject by eminent legal scholars.[1] The opinion of the majority of this court in the instant case to me in no way clarifies or makes certain what has been recognized to be uncertain in the existing jurisprudence, and leaves me more confused than ever. In my view the Court of Appeal, 129 So.2d 601, offers a better solution of the problem, and its judgment should be affirmed.

1. The Potestative Condition in Louisiana, by Wood Brown; see also Comment, 13 La.L.Rev. at p. 240, by J. Denson Smith.