342 So.2d 1196 (1977)
CADDO PARISH SCHOOL BOARD, Plaintiff-Appellee,
v.
COTTON BAKING COMPANY, INC., Defendant-Appellant.
No. 13124.
Court of Appeal of Louisiana, Second Circuit.
February 14, 1977.
*1197 Provosty & Sadler by LeDoux R. Provosty, Jr., Alexandria, for defendant-appellant.
Booth, Lockard, Jack, Pleasant & LeSage by John R. Pleasant, Shreveport, for plaintiff-appellee.
Before PRICE, MARVIN and JONES, JJ.
PRICE, Judge.
Cotton Baking Company has appealed the judgment awarding damages of $6,341.50 to the Caddo Parish School Board for an alleged breach of contract by the bakery to furnish bread products to the Caddo Parish schools for the 1973-1974 school year.
In July, 1973, the School Board mailed specifications and conditions to area bakers inviting bids for furnishing bread and bread products in the coming school year. Cotton submitted the lowest bid, and it was accepted by the School Board on August 1st. On August 17th, Cotton notified the Board by letter that it could not furnish the products at the prices quoted in its bid. This action resulted from the failure of Cotton officials to consider impending price increases in flour caused by the sale of U.S. wheat to Russia. The School Board obtained these products at a higher price under subsequent bid negotiations and sued Cotton for this increased cost, together with the expense incurred in obtaining the additional bids under the public bidding law.
Cotton contends the acceptance of its bid proposal did not create an enforceable contract because:
1) The submission of the bid was a unilateral revocable promise to sell.
2) The Board's obligation to purchase is potestative thus rendering the proposed contract a nullity.
3) The parties mutually agreed to terminate the contract.
4) The contract was voidable as it was based on an error of fact.
Cotton contends its bid was a unilateral promise to sell and is unenforceable until the School Board actually places a bread order. Under this construction of the agreement, Cotton contends it had the right to revoke its offer to sell prior to receiving a purchase order from the Board.
This interpretation is not in accord with the facts of the case. There is no doubt Cotton could have withdrawn its offer prior to acceptance by the Board. However, upon the School Board's acceptance of the bid, mutual obligations were established. Cotton was obligated to fill all orders for bread products placed by the Board during the period of the contract at the price quoted. The Board was obligated to purchase all of its bread products from Cotton. The Board had, therefore, acted to its detriment in giving up the right to purchase products from other area bakeries during this period. These mutual obligations create a bilateral commutative contract rather than a unilateral offer to sell. La. Civil Code Arts. 1798, 1803.
Cotton also contends the contract is null because its existence is dependent solely on the will of the School Board which is a prohibited potestative condition. The provision of the specifications and conditions relied on by Cotton for this position is as follows:
I understand as bidder that when I am awarded a contract for any item or group of items I will receive all orders for that item or group of items from the schools *1198 to which my quotation applies for the entire school year 1973-1974 or any portion thereof designated by the Caddo Parish School Board. Cancellation of the bid will be preceeded [sic] by two (2) weeks written notice to the successful bidder.
Cotton contends this provision relieves the Board of the obligation of buying any bread and allows it to cancel the contract at any time after giving the required notice.
The Board contends its reservation of the right to limit the period of the contract does not effect the validity of the agreement or constitute a prohibited potestative condition.
Under an offer of proof, testimony was presented which showed the purpose of the termination clause was to permit the Board to discontinue the purchase of bread from bakeries if it should be given flour under a prospective Federal program. The evidence also shows Cotton was aware of the purpose behind the termination clause and tacitly consented to this condition by bidding under the known circumstances.
A termination privilege on the part of an obligee to a contract is specifically provided for by La. Civil Code Art. 2036 as follows:
An obligation may also be made, by consent of the parties, to depend on the will of the obligee for its duration. Thus a lease may be made during the will of the lessor, and a sale may be made conditioned to be void, if the vendor chooses to redeem the property sold.
We conclude the Board's right to terminate the contract was not potestative, but was a valid privilege to determine the duration of the contract. See Long v. Foster & Associates, 242 La. 295, 136 So.2d 48 (1961), in which the Supreme Court upheld a similar termination provision.
Cotton further contends the contract was tacitly revoked by the mutual consent of the parties. This argument is based on the School Board's actions in resubmitting invitations for additional bids without responding to Cotton's revocation letter of August 17th. We find no merit to this argument. The August 17th letter by Cotton stating unequivocally it could not comply with its bid was an active breach of the contract. There was no duty for the Board to respond or to place Cotton in default.
The Board was required to act promptly to obtain bread supplies for the opening of schools. Its resubmission of bid invitations immediately after receiving Cotton's letter cannot be construed as a tacit mutual abrogation of the contract as contended by Cotton.
The remaining defense urged by Cotton is that an error was made in the calculation of the bid price on Pullman loaves of white bread. It contends the manager of its Shreveport office overlooked the escalating effect the "Russian Wheat Deal" was having on the cost of flour, and that the School Board should have been aware of the error as its bid on this item was $.09 a loaf less that the other bids. Cotton contends it should be allowed to rescind its agreement because this error was in the principal cause or motive of the contract.
The alleged error is not an error in mathematical calculation, but an error in judgment which does not entitle Cotton to rescind the agreement. In addition, Art. 1826 requires both parties to be aware of an error before a contract can be voided. There is no evidence that the School Board had any knowledge of the effect the Russian wheat sales would have on the price of bread products. The fact that Cotton's bid on the item was much less than the other bid is not in itself sufficient to impute knowledge of an error to the Board.
There is no issue as to the amount of damages awarded by the trial court. The judgment is affirmed at appellant's costs.