350 So.2d 258 (1977)
PROFESSIONAL BILLING AGENCY, INC.
v.
Ernest E. TARANTINO, D.D.S.
No. 7949.
Court of Appeal of Louisiana, Fourth Circuit.
September 8, 1977.
Rehearing Denied October 12, 1977.
*259 I. Bernard Salomon, New Orleans, for plaintiff-appellee.
Robert F. Fadaol, Gretna, for defendant-appellant.
Before LEMMON, GULOTTA and BEER, JJ.
GULOTTA, Judge.
Plaintiff, assignee of one of the defendant-doctor's accounts receivable, upon failure to collect the balance from the principal debtor, the doctor's patient, seeks reimbursement from the defendant-assignor of the principal amount due plus accrued, stipulated interest at the rate of 1½% per month. Defendant appeals from an award in favor of plaintiff in the sum of $635.40, together with stipulated interest, subject to a credit in the sum of $100.00, which was paid on the account by the debtor after suit had been filed. We affirm.
On February 20, 1974, Dr. Ernest E. Tarantino and plaintiff entered into a "CONTRACT FOR THE ASSIGNMENT OF ACCOUNTS RECEIVABLE". This instrument provided that the assignee would pay the assignor 95% of the principal amount of each account assigned. The agreement also contained a "repurchase" provision relied upon by plaintiff in the instant suit. The pertinent part of the "repurchase" clause of the assignment agreement reads as follows:
"Assignor agrees that in the event the account receivable debtor fails or refuses to make payment in accordance with the credit agreement and said failure or refusal continues for a period of 90 days, then and in that event, Assignee shall have the option to designate the said account a "defaulted account," and Assignor unconditionally guarantees to repurchase any such defaulted account for the full balance thereof immediately upon demand by Assignee.
"By mutual consent of Assignor and Assignee, a defaulted account may be retained by Assignee for legal and/or judicial collection, with the understanding that Assignee may reassert its demand for repurchase at any time, and further that any portion of principal or interest and all court costs . . . not recovered by Assignee from the defaulted account debtor, shall be the responsibility of the Assignor and shall be due and collectible from Assignor upon demand."
In connection with the assignment agreement, the parties also signed a "STATEMENT OF ASSIGNMENT OF ACCOUNTS RECEIVABLE" in which the assignor declared that he "has assigned and may continue to assign, accounts receivable to PROFESSIONAL BILLING AGENCY, INC." according to the provisions of LSA-R.S. 9:3102 et seq.
Pursuant to the assignment agreement, Tarantino, on May 15, 1974, assigned the patient's account in question to plaintiff. An "AGREEMENT" entered into between the doctor and the patient stipulates, among other things, that the patient acknowledges that the doctor may assign the account to Professional Billing Agency and that the unpaid balance would be subject to a finance charge of 1½% per month corresponding to an annual percentage rate of 18%. A copy of this agreement was forwarded to the plaintiff who in turn paid 95% of the principal balance to defendant. The debtor failed to pay the balance due, however, and on January 8, 1975, plaintiff, invoking the "repurchase" provision of the contract between assignor and assignee, demanded full payment of the defaulted *260 account by the dentist.[1] On February 5, 1975, defendant was advised that the defaulted account had been sent to an attorney for collection, and demand against defendant for full payment was reasserted. Following further demands against both the debtor-patient and defendant-doctor,[2] the instant suit was filed against the doctor on January 15, 1976. On January 30, 1976, the debtor-patient paid $100.00 on the balance due and promised further payment. Thereafter,[3] she moved to Alaska and no further payments were made.
It is defendant's first contention, on appeal, that plaintiff failed to carry out the obligations imposed upon it by the assignment agreement and that this breach prevents enforcement of the contract. According to defendant, once the debtor defaulted, the assignee had the duty to exercise one of the three following options:
1. Declare the account defaulted and make a demand upon the assignor for remittance of the amount due; or,
2. With the consent of the assignor, turn the account over to an attorney for collection; or,
3. Grant an extension to the debtor of the amount due.
Defendant argues that plaintiff granted extensions to the debtor for an inordinate amount of time (from August 31, 1974 when the account became 90 days delinquent until January 8, 1975 when permission was sought from the assignor to place the account with an attorney). Defendant complains that plaintiff's breach was in granting unreasonable extensions to the debtor permitting the debtor to leave the jurisdiction and in failing to file suit against the patient-debtor before reasserting the demand for repurchase. According to defendant, plaintiff could have availed itself of the first option provided for in the agreement by declaring the account defaulted after the expiration of a period of 90 days. In such instance, he argues, demand would have been made immediately on defendant for reimbursement and defendant could have then pursued collection against the debtor, when the debtor was still living in New Orleans and the debt was collectible.
It is true, as pointed out by defendant, that plaintiff could have demanded repurchase at the expiration of 90 days and that the debtor was permitted an inordinate amount of time to pay the indebtedness. However, as pointed out by plaintiff, the failure to file suit against the debtor was caused by the fact that the debtor's husband was in the military service, a fact known to defendant. Furthermore, plaintiff was under the reasonable impression the debtor was a friend of the assignor, and in a gesture of good will granted extensions for payment to the debtor. John K. Dewey, president of Professional Billing Agency, Inc., testified that Tarantino had been informed by telephone and computer print-out that the debtor-patient was overdue in paying her bill. Dewey further stated that it was his understanding that defendant did not want legal action to proceed against the patient because she was a friend of the assignor. Moreover, Larayne Keane, a former employee of plaintiff, stated in deposition that monthly statements were sent to the debtor-patient. This witness further stated that she had contacted the patient by telephone in August and November, 1974, and had received promises of weekly payments and that defendant had assured her *261 that the patient would make a payment. Under these circumstances, we cannot say the delays in collection by plaintiff were unreasonable. We are in agreement with the trial judge who stated in written reasons that plaintiff performed "its obligations" under the assignment.
Considering defendant's further contentions, we find no merit to his claim that the assignment agreement is null because it contains a potestative condition. LSA-C.C. arts 2024 and 2034. In support of his argument, defendant cites the following provisions of the assignment contract:
"Assignee shall have the right to grant extensions and indulgences to accounts receivable debtors in its sole discretion, and such action shall in no wise affect, limit or discharge Assignor's obligations under this contract."
Tarantino contends that the clause above permits plaintiff the right to grant unlimited extensions without ever collecting the debt. According to defendant, the assignee's diligence in collection against the debtor depends upon the will of the assignee and in the event the assignee fails to exercise diligence, reimbursement of the full amount plus interest can be obtained from the assignor. We disagree.
It is clear from Dewey's testimony that the continuance and existence of plaintiff's business enterprise is dependent upon the effectiveness with which it pursues the collection of the amounts owed from the debtors. In this regard, he stated that his corporation, itself borrowing money to purchase the accounts, can only be profitable by rapidly collecting the assigned accounts. Furthermore, in the event, as claimed by defendant, plaintiff fails to pursue collection but resorts to reimbursement, together with interest from the assignor-doctor, further assignments would not be made by the doctors and plaintiff's business would become nonexistent. Clearly the performance of the contract is not dependent upon the sole will of the assignee. See LSA-C.C. art. 2035. Rather, plaintiff must act reasonably and make an effort to collect the accounts if his factoring business is to be profitable. The extensions or indulgences contemplated in the agreement are those reasonable indulgences allowed by creditors. We conclude collection does not depend on the sole will of the assignee and the assignment does not contain a prohibited potestative condition. See King v. King, 185 So.2d 893, 895 (La.App. 3d Cir. 1966), application not considered, 249 La. 479, 187 So.2d 448 (1966), where the court stated:
"* * * . . . although performance may be dependent to some degree upon the obligor's will, if exercise or nonexercise of his will involves some detriment, disadvantage, or inconvenience to him, the condition is not considered potestative. * * *"
If, indeed, the repurchase provision of the assignment contract is potestative, it is in the nature of a non-objectionable resolutory potestative condition pertaining only to the duration of the contract (LSA-C.C. art. 2036) as distinguished from an objectionable suspensive potestative condition (LSA-C.C. arts. 2034 and 2035). Both parties have performeddefendant in assigning the account and plaintiff in advancing 95% of the balance and in pursuing collection of the accountand the act of will involves only plaintiff's demand that defendant repurchase the account. Such a resolutory condition will not nullify the contract. See Long v. Foster & Associates, Inc., 242 La. 295, 136 So.2d 48 (1961); Palmer and Plauche, "A Review of the Louisiana Law on Potestative Conditions", 47 Tul.L.Rev. 284, 303 et seq. (1973).
We likewise find no merit to defendant's next argument that because of the ambiguity in the general assignment agreement and because the agreement between plaintiff and defendant does not include a reference to stipulated interest (when the delinquent account is repurchased), plaintiff is not entitled to collect the stipulated interest in addition to the amount owed on the account. Reading the general assignment agreement between plaintiff and defendant and the agreement between the doctor and the patient together, it is clear plaintiff is entitled to recover the amount owed on the *262 account, together with stipulated interest. The general contract for the assignment provides for the payment of the "full balance" by the defendant-assignor upon demand by assignee. The agreement further provides that
". . . a defaulted account may be retained by Assignee for legal and/or judicial collection, with the understanding that Assignee may reassert its demand for repurchase at any time, and further that any portion of principal or interest and all court costs . . . not recovered by Assignee from the defaulted account debtor, shall be the responsibility of the Assignor and shall be due and collectible from Assignor upon demand."
We do not interpret this language, as defendant argues, to mean that suit must be filed against the debtor before the repurchase provision of the contract can be invoked. Furthermore, the "interest" referred to in the general contract of assignment between plaintiff and defendant, though not specified in that instrument, refers to the stipulated interest of 1½% in the agreement signed by the debtor-patient and defendant-doctor.
Accordingly, we conclude the trial judge properly rendered judgment in favor of plaintiff in the amount of $635.40 less a credit of $100.00, plus stipulated interest. The judgment is affirmed.
AFFIRMED.
NOTES
[1] Plaintiff's letter of January 8, 1975, to defendant also stated that the delinquent account would, with the doctor's approval, be sent to an attorney, presumably for collection. The doctor was instructed to indicate if he did not want an account sent to the attorney. Defendant did not respond.
[2] The debtor's delinquent account, first referred to an attorney for collection in February, 1975, was referred to a second attorney, plaintiff's counsel, in April, 1975, along with a number of other files. Plaintiff's counsel testified that he made demand on the patient in August and September, 1975, and against the doctor in July and September, 1975. The record does not disclose what actions the first attorney took to collect the account.
[3] The debtor last contacted plaintiff's counsel in early February, 1976. The record does not disclose when she left for Alaska.