GUIDRY, Judge.
Jesse F. Heard & Sons, Inc. (hereafter Heard), the general contractor of a hospital construction project, brought this suit for breach of contract against two material suppliers, Amyx Gravel Company, Inc. (hereafter Amyx Gravel) and Amyx Concrete Company, Inc. (hereafter Amyx Concrete), seeking judgment in solido for damages in the amount of $4,751.00 plus attorney’s fees. Heard contends that Amyx Gravel is liable as an original party to the alleged contract with Heard and, that Amyx Concrete, although not originally a party, is liable as the assignee of Amyx Gravel.
Amyx Gravel and Amyx Concrete answered by general denial and further asserted the defenses that the intended commutative contract is void as containing a purely potestative condition; and, in the alternative, that even if the contract is enforceable, plaintiff actively breached the contract and defendants are therefore entitled to recission or set off. Additionally, Amyx Concrete filed a reconventional demand against Heard for damages resulting from the breach of a separate and distinct contract.
At the conclusion of the trial, the trial judge rendered judgment on the main demand in favor of defendants, Amyx Gravel and Amyx Concrete, and against plaintiff, Heard, dismissing its demands. On the reconventional demand, the trial judge rendered judgment in favor of plaintiff-in-re-convention, Amyx Concrete, and against defendant-in-reconvention, Heard, in the principal sum of $1,871.51. Plaintiff has perfected a devolutive appeal. Defendants neither appealed nor answered the appeal.
FACTS
During 1977, Heard, a general contractor, submitted a bid for the expansion and renovation of the LaSalle General Hospital in Jena, Louisiana. In formulating its bid, Heard contacted a number of subcontractors and material suppliers, including Amyx Gravel. Heard requested from Amyx Gravel quotations on the price per unit of certain materials required by the bid specifications for the construction project.
On October 27, 1977, after Heard was awarded the construction contract, it prepared a written purchase order on a company printed form and submitted it to Amyx Gravel. This document was signed by an officer of Amyx Gravel and subsequently signed and accepted by an officer of Heard. Heard commenced construction of the hospital project and began ordering various quantities of some of the materials described in the document from Amyx Gravel.
During 1977, Amyx Gravel owned and operated a ready mix concrete plant, a hot mix plant, and a sand and gravel mining operation together with trucks, bulldozers, a wash plant and other heavy equipment incidental to such an operation. The shareholders of Amyx Gravel were Dewey Amyx, Viva Amyx and Charles Sidney Amyx.
Amyx Concrete was incorporated on April 17, 1978 by Marcia W. Cooksey, Henry L. Cooksey and Charles 0. Williams, the latter being a CPA retained by Amyx Gravel. Thereafter, on May 8, 1978, Amyx Gravel conveyed some 20% to 25% of its total assets, particularly the concrete plant, equipment related to the concrete business, office supplies and the lease of its former office space to Amyx Concrete. This sale makes no mention of the assumption by Amyx Concrete of any debts or obligations of the vendor, Amyx Gravel. The remainder of its assets were thereafter sold to an unrelated party. Amyx Gravel collected its accounts receivable, paid its accounts payable and made a final settlement with the Internal Revenue Service. Its normal business activities ceased on April 17, 1978. Its corporate status continued on thereafter until its charter was revoked by the *792 Louisiana Secretary of State for failure to make required annual reports.
In transacting business, Amyx Concrete continued to use Amyx Gravel invoices and statements which they had purchased but imprinted upon them the notation “please make check payable to Amyx Concrete Company, Inc.”. They also continued to occupy the same office space and use the same telephone number as Amyx Gravel, but changed the post office box number. Heard began placing orders for materials for use in the hospital construction project with Amyx Concrete and making their checks payable to Amyx Concrete.
The evidence reflects that there were several price changes over the course of the construction project. The earliest was in April of 1978 when the price per unit for dirt was adjusted on the invoice from $2.50, as was reflected by the purchase agreement with Amyx Gravel, to $3.00 per yard. Heard paid this increase. In October of 1978, Heard began receiving adjusted invoices for concrete from Amyx Concrete at a rate of $2.00 per yard higher than that reflected on the purchase agreement with Amyx Gravel. Heard nevertheless paid the October statements based on the price reflected in the October 27, 1977 purchase agreement with Amyx Gravel. On November 29, 1978, Amyx Concrete made demand upon Heard for payment of the October statement in full. In response, on December 4, 1978, Heard advised Amyx Concrete that it considered the prior payment to be proper as it was in accord with the October 27, 1977 purchase order executed by Amyx Gravel which was attached. Amyx Concrete advised Heard that it was unaware of any contract between Heard and Amyx Gravel, denied any contractual liability thereon and thereafter, refused to deliver the concrete at the lower price. Heard continued to place orders paying the increased price by separate check. The total amount of these payments is the amount claimed by plaintiff in these proceedings, i.e., $4,751.01.
The question of Heard’s liability on the reconventional demand arises out of a separate and distinct transaction. In August or September of 1978, Heard contacted an officer of Amyx Concrete and advised him that his company would need an estimated 800 yards of lightweight concrete for the project. This product is mixed with a special aggregate material, which is used only in that type of concrete. Thereafter, Amyx Concrete made a special purchase of 600 yards of the lightweight aggregate required to mix the lightweight concrete. Heard ultimately poured only 640 yards of the lightweight concrete and Amyx Concrete was left with 115 to 120 yards of the aggregate.
PURCHASE ORDER AS AN ENFORCEABLE CONTRACT
Plaintiff contends that the trial judge erred in failing to find a binding contract between the parties. In his written reasons for judgment, the trial judge made the following findings:
“The purchase order document between the Heard Company and the Gravel Company is said to be a binding contract but it is not for two reasons. The first, I believe, is because the agreement was not supported by consideration. The test for the presence or absence of consideration is a simply (sic) three-inquiry process. One must first ascertain what promise is the one sought to be enforced. Then one must ask who is or was the promisee of that promise. Finally, was that promisee given consideration. The promise sought to be enforced is the promise by Amyx Gravel Company to deliver materials at stated prices., The promisee, according to the plaintiff, was itself and in this case, the plaintiff gave nothing in return for that promise. It did not order specific quantities of materials or limit the period of time for which it would be bound to make orders or even limit the job for which the material would be used. Instead, it viewed itself linked to Amyx Gravel Company only by a potes-tative condition which seems by implication to have been that, ‘We will buy *793 all we want from you unless we can get a better deal elsewhere, ’ ” (tr. ¼-⅛5)
The plaintiff introduced the purchase order, made a part of this opinion as Appendix I, which it contends evidences the agreement between Heard and Amyx Gravel. The instrument recites that Amyx Gravel obligates itself to deliver certain materials at a certain price per unit in accordance with plans, specifications and addenda nos. 1, 2 and 3. Those plans, specifications and addenda were not made part of the record but Mr. Heard testified that these specifications and addenda provided no specific or estimated quantities of the materials to be used in the construction project. The instrument further recites that Heard accepts the agreement and orders the listed materials at the prices and on the terms set forth.
Plaintiff relies on the case of Caddo Parish School Board v. Cotton Baking Co., 342 So.2d 1196 (La.App. 2d Cir.1977) in which the court found a particular agreement enforceable as a bilateral commutative contract over defendant’s objection that the agreement was a unilateral revocable promise to sell, which the defendant had revoked before timely acceptance. The court in Cotton concluded that the existence of a simple, resolutory potestative condition was not such a stipulation as to make the obligation depending on such condition null. The agreement in the Cotton case specifically provided that Cotton obligated itself to fill orders for bread products placed by the Board for a year at the price quoted and that the Board obligated itself to purchase all of its bread products for the year from Cotton.
The purchase order in this case provides no expression of Amyx Gravel’s intent to obligate itself to provide all or any specific amounts at the listed prices nor of Heard’s intent to obligate itself to buy all or any specific quantities.
Rules for the interpretation of agreements are provided for in LSA-C.C. Arts. 1945 et seq. The intent of agreements is to be determined by the clear and explicit words of the contract. It is the common intent of all of the parties that is to be sought and determined; if there was a difference in this intent, there was no common consent and, consequently, no contract. LSA-C.C. Art. 1945. LSA-C.C. Art-1956 provides that when the intent of the parties is doubtful, the manner of its execution by either of the parties with the assent of the other furnishes a rule for its interpretation.
The manner in which Heard executed the agreement indicated that there was no intent on Heard’s part to bind itself to purchase all of the listed material required on the project from Amyx Gravel. The trial judge found that prior to the alleged breach of Amyx Gravel and/or Amyx Concrete that Heard elected to buy a significant amount of some of the materials listed on the purchase order from another contractor. The record supports the trial court’s findings and we find no manifest error in its conclusion that the purchase order did not evidence a binding contract between Heard and Amyx Gravel.
Having found no binding obligation on the part of Amyx Gravel, we need not determine whether the alleged obligation was assumed by Amyx Concrete.
AGREEMENT BETWEEN AMYX CONCRETE AND HEARD TO BUY LIGHTWEIGHT CONCRETE
On the reconventional demand, Amyx Concrete asserted its right to judgment in the amount of $1,871.51, representing the cost of the stockpiled lightweight aggregate ordered by them to fill Heard’s order for the lightweight concrete. Finding in favor of Amyx Concrete, the trial judge stated in his written reasons for judgment as follows:

“The discussions between the construction company and the concrete company were sufficient to serve as a basis for a contract. I think that since this was a special order made directly between Amyx Concrete Company and the Heard Company, and since the Heard Company intended for Amyx Concrete 
*794
Company to be ready to furnish at least 800 yards of light concrete mix, then the agreement to use aggregate, which the concrete company made in this case, should be enforced. ”

Loy Heard, Jr., an officer of Heard, testified that he talked to Harold Cooksey, an officer of Amyx Concrete, and told him he would need about 700 or 800 yards of lightweight concrete. Harold Cooksey testified that Heard told him he would need about 800 yards. Harold Cooksey subsequently called a supplier in Baton Rouge to determine the amount of aggregate necessary to pour approximately 800 yards of lightweight concrete. The supplier informed him he would need 600 yards of aggregate. Cooksey placed the order for the 600 yards which was delivered to the plant.
Amyx Concrete contends, and the trial court apparently found from the above circumstances, reciprocal consent of both parties as to the thing, the price and the terms amounting to a contract to sell under LSA-C.C. Art. 2462. We find no manifest error in this conclusion. However, we do find that the trial court erred in concluding that Heard breached the agreement.
The record makes clear that the actual amount of lightweight concrete required for the construction project was unknown and had been estimated at between 700 and 800 yards. Both plaintiff and defendant-in-reconvention were aware and admitted in their testimony that the amount mentioned in negotiations was an estimate. Under such circumstances, we believe that a valid contract was entered into with the object of the contract being uncertain but ascertainable, the end result being that Heard was obligated to purchase and Amyx Concrete was obligated to furnish all of the lightweight concrete required for the project. Our conclusion in this regard is supported by the express provisions of LSA-C.C. Art. 1886 which provides:

“An obligation must have for its object something determinate, at least as to its species.

The quantity of a thing may be uncertain, provided it be capable of being ascertained. ”

It is undisputed that Heard did, in fact, purchase all the lightweight concrete required for the project from Amyx Concrete, although something less than the original estimate. Under such circumstances, we find no breach and no liability on the part of Heard for damages.
For the above and foregoing reasons, we reverse the judgment in favor of Amyx Concrete, plaintiff-in-reconvention, and against Heard, defendant-in-reconvention, dismissing the demands of Amyx Concrete. The judgment of the trial court is affirmed in all other respects. Costs on appeal are assessed against Amyx Concrete Company, Inc.
AFFIRMED IN PART AND REVERSED IN PART.
APPENDIX I'
[[Image here]]
*795 [[Image here]]